UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| JOHN M. TOWNSEND,<br><br>        Plaintiff,<br><br>    v.<br><br>MS. HEBERT, *et al.*,<br><br>        Defendants. | 3:13-cv-00223-MMD-VPC<br><br>**REPORT AND RECOMMENDATION<br>OF U.S. MAGISTRATE JUDGE** |

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge.  The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.  Before the court is defendants' motion for summary judgment (#38).  Plaintiff opposed (#44), and defendants replied (#48).  Having reviewed the motion and all other papers, the court hereby recommends that defendants' motion be granted.

**I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

John M. Townsend ("plaintiff") is an inmate in the custody of the Nevada Department of Corrections ("NDOC").  Presently, plaintiff is incarcerated at Northern Nevada Correctional Center in Carson City, Nevada, but the alleged incidents giving rise to this action occurred during a period of incarceration at Ely State Prison ("ESP") in Ely, Nevada.  On May 1, 2013, plaintiff filed a civil rights complaint pursuant to 42 U.S.C. § 1983 (#1).  On April 22, 2014, the District Court screened plaintiff's amended complaint and allowed two claims to proceed (#8).  Both claims relate to his temporary transfer to the ESP infirmary on April 28, 2011, where defendants allegedly violated his First Amendment rights to send and receive mail and to use the telephone.  In Count III, plaintiff contends that defendants Judith Hebert ("Hebert"), Dr. Charles Mahakian ("Dr. Mahakian"), Claude Willis ("Willis"), and John/Jane Does 1 through 6 denied his requests to make legal phone calls and send and receive legal mail. (#3 at 6.)  He claims in Count IV that these defendants, together with April Witter ("Witter") and John/Jane Does 7 and 8, denied him

communication with friends and family via telephone and mail. (*Id.*) Defendants concede that restrictions were in place from April 28, 2011 to May 5, 2011, but are permissible because they related to a legitimate penological interest in plaintiff's health and safety. (#38 at 2-3; #40-2 at 2-3.)

## II. LEGAL STANDARD

Summary judgment allows the court to avoid unneeded trials. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). The court properly grants summary judgment when the record discovered by the parties demonstrates that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248-49 (1986). A dispute is "genuine" only where a sufficient evidentiary basis would allow a reasonable jury to find for the nonmoving party. *Id*. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)). Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish a genuine dispute. *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081-82 (9th Cir. 1996).

Summary judgment proceeds in burden-shifting steps. When the moving party bears the burden of proof at trial, it must support its motion "with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal quotation omitted). In contrast, a moving party who does not bear the burden of proof "need only prove that there is an absence of evidence to support the non-moving party's case[,]" *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010), and such a party may additionally produce evidence that negates an essential

element of the nonmoving party's claim or defense, *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Ultimately, the moving party must demonstrate, on the basis of authenticated evidence, that the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party as to disputed material facts. *Celotex*, 477 U.S. at 323; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014). "[W]here the party moving for summary judgment has had a full and fair opportunity to prove its case, but has not succeeded in doing so, a court may enter summary judgment *sua sponte* for the nonmoving party." *Albino v. Baca*, 747 F.3d 1162, 1176 (9th Cir. 2014) (citing *Cool Fuel, Inc. v. Connett*, 685 F.2d 309, 311 (9th Cir. 1982)).

Where the moving party meets its burden under Rule 56, the nonmoving party must "designate specific facts demonstrating the existence of genuine issues for trial. This burden is not a light one." *In re Oracle Corp.*, 627 F.3d at 387 (internal citation omitted). "The non-moving party must show more than the mere existence of a scintilla of evidence. . . . In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* (internal citations omitted). The nonmoving party may defeat the summary judgment motion only by setting forth specific facts that illustrate a genuine dispute that requires a factfinder's resolution. *Liberty Lobby*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324. Although the nonmoving party need not produce authenticated evidence, *see* Fed. R. Civ. P. 56(c), mere assertions, pleading allegations, and "metaphysical doubt as to the material facts" will not defeat a properly-supported summary judgment motion, *Orr*, 285 F.3d at 783.

### III.   DISCUSSION

Relying on *Tuner v. Safley*, defendants move for summary judgment on the basis that the restrictions imposed were lawful because they were rationally related to a legitimate penological interest. *See* 482 U.S. 78, 89-91 (1987). They argue that there is a "valid and rational connection" between the restrictions on plaintiff's communication rights and observing his mental

health. (#38 at 5.) Defendants have an interest in "preserving [plaintiff's] delicate mental health[,]" and according to Dr. Mahakian, outside communications during defendants' observation of plaintiff in the ESP infirmary could "adversely impact" their ability to effectively monitor him. (*Id.* at 6.) As a result, defendants temporarily restricted all communication to effectively observe plaintiff. (*Id.*) They further support their position by noting that the restrictions caused no "tangible injury." (*Id.*) For the following reasons, the court agrees and, therefore, recommends that their motion for summary judgment be granted.

**A.     Constitutional Rights within the Prison Context**

It is well-established that prisoners do not "forfeit all constitutional protections" simply because of their conviction or confinement. *Bell v. Wolfish*, 441 U.S. 520, 545 (1979); *see also Turner*, 482 U.S. at 84 ("Prison walls do not form a barrier separating prison inmates from the protections of the Constitution."). Prisoners have First Amendment rights to send and receive mail and to telephone access, subject to reasonable security limitations. *Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996); *Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995). Although it is important for prisoners to maintain access to their lawyers, friends, and family, prison officials may determine that "certain proposed interactions . . . have potentially significant implications for the order and security of the prison." *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989). Therefore, courts must afford "considerable deference" to prison administrators' decisions to control the "relations between prisoners and the outside world," unless there is "substantial evidence in the record to indicate that the officials have exaggerated their response." *Id.* at 408; *see also Turner*, 482 U.S. at 86.

A prison regulation that infringes on prisoner's constitutional rights is "valid if it is reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89. Security, order, rehabilitation and inmates' health are examples of legitimate and compelling penological interests. *Thornburgh*, 490 U.S. at 408 (internal citations omitted); *see also Warsoldier v. Woodford*, 418 F.3d 989, 1000 (9th Cir. 2005). There are four factors for determining reasonableness of a prison-imposed restriction: (1) the prison regulation must have a "valid, rational connection" to a legitimate and neutral governmental interest; (2) the existence of

alternative means for the inmate to exercise the right; (3) the impact upon other inmates, prison staff, and prison resources of accommodating the inmate's asserted right; and (4) whether obvious alternatives can be identified at minimal cost. *Turner*, 482 U.S. at 89-91.

A slightly different test applies to outgoing mail. There, the potential consequences for prison security are of a "categorically lesser magnitude" because they are not "centrally concerned with the maintenance of order and security within prisons." *Thornburgh*, 490 U.S. at 410, 413. Accordingly, a restriction is permissible if it is "generally necessary, does not "sweep too broadly," and has a "closer fit" to "the purpose it serves." *Id.* at 408, 411-13.

**B.     Analysis**

**1.   Incoming Mail and Telephone Claims**

Defendants aver that, on April 28, 2011, plaintiff began behaving erratically. Consequently, he was admitted to the ESP infirmary and was seen by Dr. Mahakian. (#38 at 2.) Dr. Mahakian declares that he ordered several restrictions to facilitate a full observation of plaintiff. (*Id.* at 5-6; #38-2 at 3.) Defendants contend that these mail and telephone restrictions lasted only for the duration of plaintiff's time in the ESP infirmary, from April 28, 2011 to May 5, 2011. (#38 at 6; #38-2 at 3.) In defending the restrictions, they argue that the prison has a legitimate interest in protecting inmates and providing them with the "appropriate medical care and treatment." (#38 at 6.) Therefore, they claim that the eight-day restrictions are valid and not a constitutional violation under *Turner*, entitling them to summary judgment on all claims. (*Id.*) In his opposition, plaintiff does not articulate any statements or produce evidence contesting defendants' arguments regarding the validity of the imposed restrictions. Although, he does dispute their claim that he threatened to commit suicide (#44 at 10), he does not raise an issue with their position that his behavior was erratic.

Defendants are entitled to summary judgment because the record establishes that the mail and telephone restrictions are reasonably related to a legitimate penological interest. As an initial matter, the record before the court reveals plaintiff likely suffers from depression and other psychological disorders, which support defendants' allegations of his erratic behavior. Whether plaintiff threatened suicide is not undisputed, but the dispute is immaterial because even if he did

5

not threaten suicide, he has not raised a genuine issue of fact as to the professional judgment of Dr. Mahakian and other officials as to the mental health monitoring that he required. The restrictions accompanied not his brief time in suicide watch, but instead, during the pendency of his stay in the ESP infirmary. For plaintiff to succeed in arguing that no restrictions were appropriate, he would need to point to sufficient evidence that defendants had no basis for acting. Because the court is to give deference to the professional judgment of prison officials, *see Beards v. Banks*, 548 U.S. 521, 530 (2006), and also because plaintiff has not raised a genuine issue as to the reasons for which Dr. Mahakian imposed the restrictions, plaintiff's sole point of opposition is not a material one.

The *Turner* analysis supports defendants' position that they acted to protect a legitimate penological interest. Courts have repeatedly recognized inmates' health and safety as legitimate penological interests. *See, e.g., Thornburgh*, 490 U.S. at 408; *Warsoldier*, 418 F.3d at 1000. During the time plaintiff was in Dr. Mahakian's care, the restrictions had a "valid, rational connection" to the prison's interest in his health and safety. *Turner*, 482 U.S. at 89. Dr. Mahakian found limiting plaintiff's privileges necessary to facilitate clinical observation and to protect plaintiff's mental health, and thus, these restrictions are "rationally related" to a legitimate penological interest. (#38-2 at 3.) Because an absolute restriction was necessary to allow medical professionals to properly observe plaintiff, there were no available alternatives. Accordingly, the first, second, and fourth *Turner* factors weigh in favor of reasonableness.

Had the prison accommodated plaintiff's telephone and mail rights during this time, there would have been an impact on other inmates and on prison resources. *Turner*, 482 U.S. at 90. Since plaintiff was considered a safety risk, his use of mail and telephone would require strict supervision, thereby preventing other inmates from getting care, requiring a greater use of medical resources, and potentially increasing staffing costs. Additionally, removing plaintiff's restrictions for select periods may cause other inmates in observation to want their restrictions lifted for periods of time, which could further increase costs and use of staff resources. *See id.* (discussing how accommodating a right may have a "significant 'ripple effect'" on other inmates). Thus, the third *Turner* factor also weighs in favor of reasonableness. In sum, the

*Turner* factors instruct that, from April 28, 2011 through May 5, 2011, the mail and telephone restrictions were reasonably related to a legitimate penological interest and are, therefore, lawful. Defendants are entitled to summary judgment on the restrictions during that time period.

However, defendants acknowledge that plaintiff was not moved to an "appropriate housing unit" until May 19, 2011, and plaintiff alleges that the restrictions endured until that date. (#38 at 3; #1 at 1.) Consequently, a second period demands the court's review. Here, defendants dispute plaintiff's allegations of any restrictions and specifically deny that Willis ignored any phone pin requests or had any knowledge of such requests. (#38 at 6.) In his opposition, plaintiff concedes that he received mail, but without return address labels. (#44 at 10.) He also contends that Willis denied his phone pin requests. (*Id.*) However, he fails to provide specific dates to support these claims, such that it is apparent that these alleged restrictions followed his time in the infirmary. Defendants argue that plaintiff has produced no supporting evidence and has only made "conclusory allegations that are unsupported by factual data." (#48 at 2, 5.) Therefore, they move for summary judgment because there is no specific evidence to create a genuine issue of material fact.

Defendants are entitled to summary judgment for the May 5, 2011 to May 19, 2011 period because plaintiff has failed to demonstrate the existence of a genuine factual issue that requires resolution by the factfinder. Defendants have introduced evidence that no restrictions were in place past May 5, and plaintiff does not argue or point to evidence to the contrary. Notably, within plaintiff's medical records, no restrictions are listed after May 5, 2011, whereas restrictions are explicitly stated for the April 28, 2011 to May 5, 2011 period. (#40-2 at 2-3.) Therefore, the record supports defendants' arguments that the restrictions were not in place.

Moreover, even assuming plaintiff's complaint is true—i.e., that the restrictions were in place until May 19, 2011—he still concedes that he received mail and is, therefore, precluded from prevailing on his incoming mail claim. (#44 at 10.) Regarding the telephone access claim, summary judgment has been found proper where the plaintiff's allegations did not specify whether his denied telephone access occurred on "an occasion when he had a specific need." *Keenan*, 83 F.3d at 1092. Here, plaintiff has stated no basis for a reasonable jury to conclude that

he was denied the telephone at such a moment. Accordingly, there is no basis for finding that such a restriction, even if it occurred, was unreasonable under *Turner*. *See Strandberg v. Helena*, 791 F.2d 744, 747 (9th Cir. 1986). Further, "[a] conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence is insufficient to create a genuine issue of material fact." *FTC v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997). Plaintiff fails to provide evidence or specifics concerning his purported attempts to use the telephone. So, even if the court liberally views his opposition's telephone statement to apply to the post-infirmary period, his conclusory declaration is nevertheless insufficient to create a genuine factual issue. For these reasons, the court recommends that defendants' motion for summary judgment be granted as to the incoming mail and telephone claims for the pendency of dates provided in the complaint.

**2. Outgoing Mail**

Regarding the outgoing mail claims, defendants argue that they are entitled to summary judgment because the same legitimate penological interest, plaintiff's health and safety, is rationally related to the restrictions. (#38 at 6.) They state, and plaintiff does not refute, that he never actually requested to send mail. (*Id.* at 5-6. ) Plaintiff counters that he was prevented from sending personal letters because he received mail without return address labels and Witter ignored his requests for his address book. (#44 at 10-11.) Defendants allege that plaintiff has only made "conclusory allegations that are unsupported by factual data." (#48 at 5.)

Assuming that removing return labels and denying the address book constitute a violation of the right to send mail, the restriction must be analyzed under the "generally necessary" standard. *Thornburgh*, 490 U.S. at 411. During the eight-day observation period, and as previously described, Dr. Mahakian restricted plaintiff's communication privileges to facilitate medical observation. (#38 at 5-6.) Dr. Mahakian's Declaration, coupled with ESP's Progress Notes and Orders, establish reasons beyond dispute for legitimate concerns about plaintiff's health and safety. (*See* #38-2 at 3; #40-1 at 2; #40-2 at 2-3.) Specifically, defendants produced evidence that plaintiff stated, "[he] will kill [him]self with whatever [he] can find." (#40-3 at 3.) This evidence supports Dr. Mahakian's opinion that imposing certain restrictions was required to

8

protect plaintiff's health and safety and that such restrictions were "generally necessary." *Thornburgh*, 490 U.S. at 411.

As the court discussed above, the record establishes that there were no restrictions in place after plaintiff's discharge to custody on May 5, 2011. (#40-2 at 3.) In plaintiff's opposition, he concedes that he received some mail but without return address labels, preventing him from responding. (#44 at 10.) However, he fails to provide any information or produce evidence regarding these allegations, such as the sender's identity, dates of receipt, or even a copy of an envelope. Plaintiff's allegations are mere assertions uncorroborated by facts and insufficient to defeat a summary judgment motion. He alleges these incidents occurred while he was in the infirmary, and defendants do not specify that they physically moved plaintiff out of the ESP infirmary once he was discharged to custody and the restrictions were lifted. (*Id.*; #38 at 3.) Thus, he could have received mail without labels after he was discharged on May 5, 2011, or during the timeframe of his observation, from April 28, 2011 through May 5, 2011, when defendants had a legitimate penological interest. Although there is some uncertainty surrounding the timeframe of these alleged events, it is ultimately immaterial because plaintiff fails to raise a genuine issue of material fact due to the lack of supporting evidence.

With respect to the address book, he similarly fails to identify particular dates that he tendered requests to Witter. As the court discussed above, an affidavit lacking specificity and detailed facts will not "create a genuine issue of material fact." *See FTC*, 104 F.3d at 1171. Further, defendants point out and the record establishes that plaintiff has not produced a kite or other documentation to support his contention that he made any requests to Witter. (#38 at 6; #48 at 5.) As Witter is the ESP Property Sergeant, and thus works in the property room, plaintiff must submit a kite to obtain property from her. Stated differently, Witter does not work in the infirmary and thereby would have no direct contact with plaintiff, such that he could have made oral requests. Yet despite his conclusory contention that he made requests, he produces no kites in support of his allegation. Accordingly, the court recommends that summary judgment be granted in defendants' favor as to the entire period for the outgoing mail claims, as the record

establishes a legitimate reason for the restriction during plaintiff's time in the infirmary and an absence of restriction thereafter.

## IV.   CONCLUSION

For the reasons stated herein, the court recommends that defendants' motion for summary judgment (#38) be granted on both Counts III and IV.  At all times, the restrictions defendants imposed were lawful under *Turner* and *Thornburgh*, and the record supports that no restrictions endured after plaintiff's stay in the ESP infirmary.  Plaintiff has failed to demonstrate the existence of a genuine factual dispute for the period that preceded his return to general population, and consequently, summary judgment is warranted.

The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt.  These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## V.   RECOMMENDATIONS

**IT IS THEREFORE RECOMMENDED** that defendants' motion for summary judgment (#38) be **GRANTED**;

**IT IS FURTHER RECOMMENDED** that the Clerk **ENTER JUDGMENT** and close this case.

**DATED**: July 28, 2015.

_____
**UNITED STATES MAGISTRATE JUDGE**